UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>    –against–<br><br>HERZEL MEIRI and AMIR MEIRI,<br><br>         Defendants.<br><br>PETERMARK II LLC and ADVILL CAPITAL LLC,<br><br>         Third-Party Petitioners,<br><br>(Re: Specific Property: 644 Chauncey Street, Brooklyn, New York) Asset ID: 18-FBI-003286 | <u>ORDER</u><br><br>15 Cr. 627 (ER) |

RAMOS, D.J.:

  Third-Party Petitioners Petermark II LLC and Advill Capital LLC have moved for summary judgment to amend the preliminary order of forfeiture concerning the property at 644 Chauncey Street, Brooklyn, New York 11207, Block 3450, Lot 21 (the "Chauncey Street property"). Doc. 800 at 2. Petitioners request a declaration of the validity of their interests in the property based on their status as bona fide encumbrancers or, in the alternative, an amendment of the forfeiture order to provide that their claims for a constructive trust or equitable subrogation are superior to the interests of the United States and any other claimant. *Id.* For the reasons set forth below, the motion for summary judgment is DENIED.

I.   BACKGROUND

  Many of the facts relevant to this motion are set out in the Court's prior opinion denying Petermark summary judgment with respect to two other properties. *United*

*States v. Meiri*, No. 15 Cr. 627 (ER), 2021 WL 5494771, at *1–2 (S.D.N.Y. Nov. 23, 2021); *see* Doc. 831 at 2–4.  Here too, the motion arises from the aftermath of a scheme perpetrated by Herzel Meiri, Amir Meiri, and others at Launch Development LLC and Homeowner Assistance Services of New York (HASNY) from 2013 to 2015.  *Meiri*, 2021 WL 5494771, at *1; Doc. 807 at 2.  Under the guise of providing loan assistance and renegotiation services, HASNY deceived financially distressed New York City homeowners into selling or deeding their properties to HASNY through various business entities.  *Meiri*, 2021 WL 5494771, at *1.  The government brought charges against seven individuals, all of whom have been convicted.  Doc. 807 at 2.

One couple targeted by this scheme was Olive Holmes and Vincent Holmes, who purchased the Chauncey Street property in 1997.  Doc. 802-2 ¶ 1.  Defendant Mario Alvarenga told the Holmeses that HASNY could help lower their mortgage payments.  *Id.* ¶ 8; Doc. 367 ¶ 9.  Instead, the defendants deceived the Holmeses into signing documents that transferred title to the Chauncey Street property to Martin Development & Management, LLC, in September 2014.  Doc. 802-2 ¶¶ 12–19; Doc. 367 ¶¶ 15–18.

A few months later, in February 2015, Petermark loaned Launch Development $700,000 secured by a mortgage on properties located at 2146 and 2148 Fulton Street in Brooklyn, New York.  Doc. 807 at 2; *see also Meiri*, 2021 WL 5494771, at *1.  On March 11, 2015, Petermark and Advill loaned $800,000 to Martin Development, UUA LLC, and Horatio Management LLC.  Doc. 807 at 2; Doc. 797-9.  The loan was secured by the Chauncey Street property and two other Brooklyn properties located at East 26th Street and Montgomery Street.  Doc. 807 at 2; Doc. 797-9.  On the same day, Petitioners agreed to include the Fulton Street properties in that mortgage as well.  Doc. 807 at 2–3; Doc. 805-1.  The mortgage was recorded on March 19, 2015.  Doc. 807 at 3; Doc. 797-9.

A title report prepared in advance of the closing noted that the East 26th Street property had two UCC-1 financing statements filed against the prior owner by Launch

2

Development.  Doc. 807 at 3; Doc. 797-13 at 9.[1]  Those statements—prepared on consecutive days—were classified as "fixture filings."  Doc. 807 at 3; Doc. 806-3; Doc. 806-4.  But they described the collateral in generic language that covered "[a]ll property which is so attached to the land or the improvements as to constitute a fixture under applicable law."  Doc. 807 at 3; Doc. 806-3; Doc. 806-4.  The report stated that the UCC-1 financing statements were being investigated.  Doc. 807 at 3; Doc. 797-13 at 9.  On March 17, 2015, two UCC-3 filing statements were recorded terminating the UCC-1 statements.  Doc. 807 at 3; Doc. 806-5; Doc. 806-6.

On March 19, 2015, Petitioners agreed to release the Montgomery Street property from the mortgage.  Doc. 807 at 3; Doc. 439-7.  They agreed to release the East 26th Street property from the mortgage as well on August 19, 2015, several months after Amir Meiri was charged with fraud relating to Launch Development.  Doc. 807 at 3; Doc. 439-6.  The remaining balance on the mortgage after releasing those two properties was $200,000.  Doc. 807 at 3; Doc. 798 ¶ 11.

A criminal complaint was filed against Amir Meiri and others on May 20, 2015.  *Meiri*, 2021 WL 5494771, at *2; Doc. 1.  In April 2018, Meiri pled guilty to Count One of the indictment and agreed to forfeit all right, title, and interest in the Chauncey Street property—and several other properties—to the United States.  *Meiri*, 2021 WL 5494771, at *2; Doc. 292.  The Court entered a preliminary order of forfeiture.  *Meiri*, 2021 WL 5494771, at *2; Doc. 292.  Petermark and Advill subsequently petitioned the Court for an ancillary hearing to adjudicate their interests in the Chauncey Street property.  Doc. 439.

On May 24, 2021, the Court granted Petitioners leave to move for summary judgment on the petition.  Doc. 789.  Petitioners did so on July 6, 2021.  Docs. 796–800.

---

[1] "The filing of a UCC-1 financing statement is a means of perfecting a creditor's interest in collateral and giving that creditor priority over other creditors." *Rothberg v. Chloe Foods Corp.*, No. 06 Civ. 5712 (CPS), 2007 WL 2128376, at *5 n.35 (E.D.N.Y. July 25, 2007).

3

Both the United States, Doc. 808, and Vincent Holmes, Docs. 802–06, opposed the motion.[2]

## II. LEGAL STANDARD

Criminal forfeiture proceedings are governed by 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2. After a conviction or guilty plea, "the court must determine what property is subject to forfeiture under the applicable statute." Fed. R. Crim. P. 32.2(b)(1)(A). "If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria." Fed. R. Crim. P. 32.2(b)(2)(A). That order is entered "without regard to any third party's interest in the property." *Id.*

A third party may then assert an interest in the property and "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). A petitioner can demonstrate a valid interest in property subject to forfeiture by showing that one of two conditions applies:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

*Id.* § 853(n)(6). The petitioner must establish by a preponderance of the evidence that one of these conditions applies. *Id.*; *see also Pacheco v. Serendensky*, 393 F.3d 348, 351

---

[2] Olive Holmes is now deceased. Doc. 802-2 ¶ 1.

4

(2d Cir. 2004).  If the petitioner meets this burden, "the court shall amend the order of forfeiture in accordance with its determination."  21 U.S.C. § 853(n)(6); *see also United States v. King*, No. 10 CR 122 (JGK), 2012 WL 2261117, at *5 (S.D.N.Y. June 18, 2012).  When this ancillary proceeding concludes, the Court enters a final order of forfeiture "by amending the preliminary order as necessary to account for any third-party rights."  Fed. R. Crim. P. 32.2(c)(2).  The Court may also decide a third-party petition without a hearing by allowing parties to move for summary judgment.  *King*, 2012 WL 2261117, at *5.

A motion for summary judgment on a criminal forfeiture petition is governed by Federal Rule of Civil Procedure 56.  *Id.*; *see also* Fed. R. Crim. P. 32.2(c)(1)(B).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

When deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  In opposing a motion for summary judgment, however, the non-moving

party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

## III. DISCUSSION

Petitioners raise two arguments in their motion for summary judgment: (1) that they are bona fide encumbrancers for value, and (2) alternatively, that they are entitled to an equitable mortgage lien under the doctrine of equitable subrogation. Doc. 800 at 4, 8. With respect to both arguments, the Court concludes that summary judgment is not warranted.

### A. Bona Fide Encumbrancers for Value

First, Petitioners assert that they are bona fide encumbrancers for value. *Id.* at 4. To obtain relief pursuant to 21 U.S.C. § 853, a petitioner

> must either (a) have an interest in the property that is superior to the criminal defendant's because it arose prior to "the time of the commission of the acts [that] gave rise to the forfeiture," 21 U.S.C. § 853(n)(6)(A), or (b) be a "bona fide purchaser for value" of the property who was "reasonably without cause to believe that the property was subject to forfeiture" at the time of purchase, *id.* § 853(n)(6)(B).

*Pacheco*, 393 F.3d at 353 (alteration in original). The question whether a petitioner is a bona fide purchaser is determined by reference to state law. *See id.* (citing *United States v. Harris*, 246 F.3d 566, 571 (6th Cir. 2001)); *see also, e.g., United States v. Mendez*, No. 07 Cr. 107 (ARR), 2009 WL 1706354, at *3 (E.D.N.Y. June 17, 2009) ("The determination of the relevant property interests, including the definition of a bona fide purchaser for value, are governed by state law.").

Under New York law, "if a purchaser or encumbrancer knows facts that would 'excite the suspicion of an ordinarily prudent person' and fails to investigate, the purchaser or encumbrancer will be chargeable with that knowledge which a reasonable

inquiry, as suggested by the facts, would have revealed." *Booth v. Ameriquest Mortg. Co.*, 881 N.Y.S.2d 152, 153 (App Div. 2009) (quoting *Miner v. Edwards*, 634 N.Y.S.2d 306, 307 (App. Div. 1995)). "A mortgagee who fails to make such an inquiry is not a bona fide encumbrancer for value." *Id.* at 153–54.

In addition, 21 U.S.C. § 853(n)(6)(B) requires a petitioner to show that it was "reasonably without cause to believe that the property was subject to forfeiture." A court must examine "not merely whether the petitioner had knowledge of the forfeitability of the asset but whether the petitioner reasonably held the belief that the property was not subject to forfeiture." *United States v. Dreier*, 952 F. Supp. 2d 582, 588 (S.D.N.Y. 2013) (quoting *King*, 2012 WL 2261117, at *8). "This standard precludes 'wilful blindness' on the part of a petitioner and imposes a duty of reasonable inquiry, where warranted, before 'objective reasonableness' can be established." *United States v. Medina Cuartes*, 155 F. Supp. 2d 1338, 1343 (S.D. Fla. 2001) (citing *In re Moffitt, Zwerling & Kemler, P.C.*, 846 F. Supp. 463, 474–75 (E.D. Va. 1994)); *see also Dreier*, 952 F. Supp. 2d at 588 ("In appropriate circumstances, this objective test requires a petitioner 'to conduct further inquiry before seeking to obtain an interest' in property that may be subject to forfeiture." (quoting *King*, 2012 WL 2261117, at *9)).

Petitioners assert that they are bona fide encumbrancers for value because they have a legal interest in the Chauncey Street property and were without notice of fraudulent intent. Doc. 800 at 7. The Court concludes that Petitioners have not carried their burden at the summary judgment stage.

On this issue, the Court's denial of summary judgment with respect to the Fulton Street properties in *Meiri* is instructive. That decision involved a similar legal question. The defendants had deceived the owners of the Fulton Street properties into transferring the properties to Launch Development. *Meiri*, 2021 WL 5494771, at *1. Petermark then loaned Launch Development $700,000 secured by a mortgage on the Fulton Street properties. *Id.* As in this case, Petermark argued that it had no notice of fraud at the time

7

of the mortgage. *Id.* at *4. Petermark asserted that its mortgage was recorded months before the criminal complaint was filed and that there was no other information that should have alerted them to fraud. *Id.* The government, on the other hand, argued that there were numerous red flags that should have given Petermark reason to question the fraudulent nature of Launch Development's ownership of the Fulton Street properties. *Id.* (summarizing eight different red flags identified by the government).[3] Based on all these irregularities, the Court concluded, "the Government has established a triable issue of fact as to whether Petermark should have known of fraudulent conduct rendering the [Fulton Street] Premises forfeitable." *Id.* at *5.

Petermark and Advill entered into the Chauncey Street transaction after Petermark had already completed the Fulton Street transaction. Accordingly, the same red flags that created a triable issue of fact as to the Fulton Street properties in *Meiri* also defeat summary judgment here. As the government points out, "if the Petitioners were aware of potential fraud with respect to the Fulton Street Property, yet continued to loan money to the Meiris, an ostrich inference may be appropriate." Doc. 807 at 10; *see, e.g.*, *United States v. Frykholm*, 362 F.3d 413, 416–17 (7th Cir. 2004) (invoking ostrich inference in forfeiture context to deny summary judgment to victim alleging it was bona fide purchaser). The case against summary judgment is even stronger here, moreover, because of the additional red flags identified by the government and Holmes with respect to the later transaction. For instance, the government contends that the UCC-1 financing

---

[3] Those red flags were: (1) the two Fulton Street properties were transferred to Launch Development in two separate transactions two months apart; (2) the deeds listed HASNY in both the "Presenter" and the "Return To" fields; (3) Petermark's sole employee visited Launch Development's office, which contained signage for HASNY; (4) the title report for 2148 Fulton Street reflected low consideration of just $1,000 for a multifamily unit with a storefront; (5) the title report suggested that additional information should be obtained prior to closing, but Petermark closed on the loan before the submission of affidavits from Samuel Nyamekye, one of the owners of the properties; (6) Nyamekye's affidavits showed a sale price of $1,000 subject to the existing mortgages, which would not have made economic sense for the owners; (7) one of Nyamekye's affidavits stated that he owned part of Launch Development, which Petermark knew to be inaccurate but did not investigate; and (8) the title report did not mention 2146 Fulton Street at all. *Meiri*, 2021 WL 5494771, at *4.

statements concerning the East 26th Street property "should have raised obvious red flags" both because of the content of the statements and because the filing of two UCC statements on consecutive days is "highly unusual." Doc. 807 at 11; *see also id.* at 11–13 (asserting that Petitioners "paid little attention to the irregularities of the UCC-1 statements"). And Holmes notes that the title report also included red flags with respect to the Chauncey Street property, such as unresolved outstanding charges and violations dating from prior ownership of the properties. Doc. 802-2 ¶¶ 50–51; Doc. 802 at 16–17.

In response, Petitioners offer little more than a conclusory assertion that "there has been no evidence that Petermark or Advill were on notice prior to making [their] mortgage loan, constructive or otherwise, that the Premises were or going to be subject to forfeiture due to the scheme conducted by the Meiris and their co-conspirators." Doc. 800 at 7. At this stage, Petitioners have not provided any persuasive explanation as to why the red flags identified by the government and Holmes could not have put them on notice of the fraud. Because there is a triable issue of fact as to whether Petitioners should have known of fraudulent conduct rendering the Chauncey Street property forfeitable, Petitioners are not entitled to summary judgment.

### B. Equitable Subrogation

In the alternative, Petitioners argue that even if they are not bona fide encumbrancers, they are entitled to an equitable mortgage lien under the doctrine of equitable subrogation. *Id.* at 8. "The doctrine of equitable subrogation provides that a mortgagee who pays off a prior mortgage without knowledge of the existence of an intervening lien may have its rights subrogated to the rights of the senior mortgage and thus gain priority over the intervening lien holder." *Meiri*, 2021 WL 5494771, at *5 (citation omitted).

Again, a similar argument failed with respect to the Fulton Street properties in *Meiri*. Petermark asserted that it was "entitled to equitable subrogation in the amount of $4,662.54 plus interest from March 4, 2015 for prior liens against the [Fulton Street]

9

Premises that were satisfied through Petermark's loan proceeds." *Id.* In addressing that argument, the Court first noted that "[n]one of the cases Petermark cites in support of [its] claim for equitable subrogation contain such a claim in the context of a criminal ancillary proceeding." *Id.* But even assuming that such a claim was available, the Court found that Petermark was not entitled to summary judgment. As the Court noted, "[s]ubrogation is only appropriate to prevent unjust enrichment where the person seeking subrogation has performed an obligation due to misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition." *Id.* (citing *GMAC Mortg., LLC v. Orcutt*, 506 B.R. 52, 71 (D. Vt. 2014)). If Petermark knew of the underlying fraud, the Court explained, then it would not be entitled to equitable subrogation. *Id.* As a result, the same factual issue that precluded summary judgment on Petermark's claim as a bona fide encumbrancer also precluded summary judgment on the equitable subrogation claim. *Id.* The same logic applies here to Petitioners' equitable subrogation claim with respect to the Chauncey Street property.

## IV.  CONCLUSION

For the foregoing reasons, Petitioners' motion for summary judgment is DENIED. The parties are directed to appear for an in-person status conference concerning the Fulton Street properties and the Chauncey Street property on February 21, 2024, at 4:30 p.m., at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, Courtroom 619.

The Clerk of Court is respectfully directed to terminate the motion, Docs. 796–800.

It is SO ORDERED.

Dated:  January 30, 2024
        New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.

10