UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                Plaintiff,

– against –

HERZEL MEIRI and AMIR MEIRI,

                Defendants.

**OPINION & ORDER**

15 Cr. 627 (ER)

RAMOS, D.J.:

    The City of New York and MTAG Services, LLC, separately move to reopen the final order of forfeiture concerning the property at 101 Rogers Avenue, Brooklyn, New York 11216 (Block 1233, Lot 9).  Docs. 931, 841.  Their motions are DENIED.

## I. BACKGROUND

### A. The Property

    The Rogers Avenue property is a twelve-unit apartment building.  Doc. 932 ¶ 7.  It was purchased by Melvin Shuler and his late wife in December 2001.  Doc. 844-2 ¶¶ 1–2.  The defendants in the underlying criminal case deceived the Shulers into transferring title to the property to the defendants in May 2014.  *Id.* ¶¶ 6–14.[1]

    After the defendants stole the Rogers Avenue property, it fell into disrepair.  Doc. 941-1 ¶ 4.  The City levied tax liens on the property in 2015, 2016, and 2017.  Doc. 842-2 ¶¶ 6, 21.  The City sold those tax liens to various New York City Tax Lien (NYCTL) trusts, and they were eventually assigned to the NYCTL 1998-2 Trust.  *Id.*; *see* Doc. 842-1 at 3–4.  The Bank of New York Mellon (BNY) serves as the collateral agent and custodian of the tax liens.  Doc. 842-2 ¶ 4.  MTAG is the servicer of the liens.  *Id.*

---

[1] This theft was part of a broader scheme, described in other opinions, in which the defendants defrauded vulnerable New York City residents out of their homes or other properties.  *See, e.g.*, *United States v. Meiri*, No. 15 Cr. 627 (ER), 2021 WL 5494771, at *1 (S.D.N.Y. Nov. 23, 2021).

### B. The Forfeiture Proceeding

Two defendants, Herzel and Amir Meiri, pled guilty to conspiracy to commit wire fraud and bank fraud on April 10, 2018. Doc. 300. The Court entered preliminary orders of forfeiture on April 16. Docs. 292, 293. The Meiris agreed to forfeit several properties, including 101 Rogers Avenue, to the United States. Docs. 292, 293.

From May 3 to June 1, 2018, a notice of forfeiture was posted on an official government website. Doc. 663 ¶ 6. The government also sent the preliminary order of forfeiture to more than sixty interested parties. *Id.* ¶ 7. The list of recipients included the Department of Housing Preservation and Development (HPD) and other City agencies, but it did not include the City's corporation counsel. *Id.* The preliminary order of forfeiture was sent to NYCTL and BNY as well. *Id.* BNY did not alert MTAG to the forfeiture proceeding. Doc. 842-2 ¶ 24.

On July 2, 2018, Shuler filed a third-party petition asserting an interest in the Rogers Avenue property. Doc. 354. On August 16, 2019, the government submitted a proposed stipulation, signed by Shuler, withdrawing the petition. Doc. 608-1. The stipulation provided that upon entry of a final order of forfeiture, the government would "begin the process of remission to convey legal title of the [Rogers Avenue property] to [Shuler]." *Id.* ¶ 3. The Court entered the stipulation on August 19, 2019. Doc. 609. A few months later, on December 6, the Court entered a final order of forfeiture as to the Rogers Avenue property (and five other properties). Doc. 664.

The government conveyed the Rogers Avenue property to Shuler via quitclaim deed on May 25, 2021. Doc. 844 ¶ 28. Approximately one month later, on June 18, Shuler sold his interest in the property to Nasir Holding Group 101 Corp. *Id.* ¶ 31. The president of Nasir Holding states that the company purchased the property with the understanding that any tax liens and other encumbrances "ceased to exist" after the property was forfeited to the United States. Doc. 844-3 ¶ 10.

On November 19, 2021, Nasir Holding filed a quiet title action in New York state court against the City, BNY, and others. Doc. 842-28. Nasir Holding requested a judgment declaring that it holds the Rogers Avenue property free and clear of any encumbrances and that the defendants have no interests in the property. *Id.* at 19. The City asserts that it first learned of this forfeiture proceeding upon the filing of the quiet title action. Doc. 944 at 11. Similarly, MTAG says it became aware of the forfeiture proceeding after summonses on BNY were filed in the quiet title action on November 29, 2021. Doc. 842-1 at 8; Doc. 842-2 ¶ 31; *see* Doc. 842-29.

### C. The Motions to Reopen

In early 2022, more than two years after the Court entered the final order of forfeiture as to 101 Rogers Avenue, MTAG and the City separately moved to reopen that order under Federal Rule of Civil Procedure 60(b). MTAG filed its motion on January 27, 2022. Doc. 842. MTAG contends that it is unfairly prejudiced by the final order because it did not receive notice of the forfeiture proceeding. Doc. 842-1 at 2. Shuler and Nasir Holding (represented by the same counsel) opposed MTAG's motion, Doc. 844, as did the government, Doc. 849.

The City moved to reopen the final order of forfeiture as well. The City filed its initial motion—which concerned multiple properties, including 101 Rogers Avenue—on February 11, 2022. Doc. 847. Shuler and Nasir Holding opposed the motion on February 24, 2023. Doc. 899. At a status conference on January 9, 2024, the Court directed counsel for the City, Shuler and Nasir Holding, and the government to meet and confer regarding the Rogers Avenue property. The parties did so but were unable to reach an agreement. Doc. 919. The Court set a briefing schedule for the City to file an amended Rule 60(b) motion. Doc. 920.[2]

---

[2] As noted, the City's original Rule 60(b) motion concerned several other properties in addition to 101 Rogers Avenue. Doc. 847. The government subsequently stated that it was working with the City to resolve the City's interests in those other properties, Doc. 919 at 1 n.1, so this opinion does not address them.

3

On February 23, 2024, the City filed an amended Rule 60(b) motion relating to only the Rogers Avenue property. Doc. 931. The City argues that the government's notice of the forfeiture action was deficient because it was not sent to the corporation counsel. Doc. 935 at 1, 13–15. As a result, the City was not able to timely assert its interests in the property, including: an order to correct numerous housing violations issued by HPD; judgments issued by HPD and the Environmental Control Board; outstanding taxes collected by the Department of Finance; and a notice of sidewalk violation issued by the Department of Transportation/Bureau of Highways—"all of which remain open and/or unpaid." *Id.* at 1. The City notes that as of January 2024, the property had approximately 562 open violations. *Id.* at 3–4.

Shuler and Nasir Holding opposed the City's motion. Doc. 941. The government maintained that it provided adequate notice to the City, but it did not take a position on the ultimate resolution of the motion. Doc. 942 at 1 & n.1.

## II.    LEGAL STANDARD

Rule 60(b) is "a mechanism for extraordinary judicial relief invoked only if the moving party demonstrates exceptional circumstances." *Hines v. BMG Rts. Mgmt. (US) LLC*, No. 20 Civ. 3535 (JPO), 2024 WL 113498, at *4 (S.D.N.Y. Jan. 10, 2024) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)). The rule provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;

4

> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  A Rule 60(b) motion "must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c)(1).  The party seeking relief bears the burden of proof.  *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001).

The catch-all provision in Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case," but "that reservoir is not bottomless." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (citation omitted).  "Recognizing Rule 60(b)(6)'s potentially sweeping reach, courts require the party seeking to avail itself of the Rule to demonstrate that 'extraordinary circumstances' warrant relief."  *Id.*  In addition, "Rule 60(b)(1) and Rule 60(b)(6) are mutually exclusive, such that any conduct which generally falls under the former cannot stand as a ground for relief under the latter."  *Id.* (internal quotation marks and citation omitted).  Put differently, relief under Rule 60(b)(6) is foreclosed where a party's motion "is premised on grounds fairly classified as mistake, inadvertence, or neglect." *Id.*

### III.   DISCUSSION

As a preliminary matter, it is not entirely clear which subsection of Rule 60(b) applies here.  Both the City and MTAG invoke Rule 60(b)(6).  Doc. 935 at 4–5; Doc. 842-1 at 8–9.  Other courts, however, have analyzed similar motions under Rule 60(b)(1), which covers instances of "mistake, inadvertence, surprise, or excusable neglect."  *See United States v. Puig*, 419 F.3d 700, 702 (8th Cir. 2005) (invoking Rule 60(b)(1)'s "excusable neglect" standard where moving party argued that his failure to file timely petition should be excused because government did not provide him adequate notice of its intent to forfeit property); *United States v. Concepcion*, 668 F. Supp. 3d 153, 160

(W.D.N.Y. 2023) (concluding that government's failure to properly file notice of forfeiture in accordance with state law "is fairly classified or categorized as a mistake and falls squarely within the ambit of Rule 60(b)(1)" (internal quotation marks and citation omitted)). *But cf. United States v. Singer*, No. 19 Cr. 10078 (DJC), 2024 WL 1702128, at *15 (D. Mass. Apr. 19, 2024) (analyzing motion under Rule 60(b)(6)); *United States v. Bouler*, 927 F. Supp. 911, 916 (W.D.N.C. 1996) (same).

As discussed, Rule 60(b)(1) and Rule 60(b)(6) are mutually exclusive. *Stevens*, 676 F.3d at 67. And if Rule 60(b)(1) supplies the proper standard, then the City's and MTAG's motions are untimely because they were filed more than two years after the final order of forfeiture was entered in December 2019. *See* Fed R. Civ. P. 60(c)(1) (providing that motions under Rule 60(b)(1)–(3) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding"); *Concepcion*, 668 F. Supp. 3d at 159–60 (holding that motion filed almost two years after entry of final order of forfeiture was untimely under Rule 60(b)(1)).

The Court need not resolve the issue, however, because the motions fail even if Rule 60(b)(6) applies. Any Rule 60(b) motion must be filed "within a reasonable time." Fed. R. Civ. P. 60(c)(1). Here, the City states that it was "not informed of the forfeiture action until Nasir filed its quiet title action." Doc. 944 at 11. Nasir Holding filed the quiet title action on November 19, 2021. Doc. 842-28. The City moved to reopen the forfeiture order on February 11, 2022. Doc. 845. So almost three months elapsed between the date the City says it learned of the forfeiture action and the date it filed its Rule 60(b) motion.

MTAG likewise asserts that it did not learn of the forfeiture proceeding until summonses on BNY were filed in the quiet title action on November 29, 2021. Doc. 842-1 at 8; Doc. 842-2 ¶ 31; *see* Doc. 842-29. Two months later, on January 27, 2022, MTAG moved to reopen the forfeiture order under Rule 60(b). Doc. 841.

6

Based on these timeframes, the Court concludes that the City's and MTAG's motions were not made "within a reasonable time," as required by Rule 60(c)(1).  Under the criminal forfeiture statute, a third party asserting a legal interest in forfeited property must do so "within thirty days of the final publication of notice or his receipt of notice . . . , whichever is earlier."  21 U.S.C. § 853(n)(2).  Courts routinely deny third-party petitions not filed by the statutory deadline.  *See, e.g.*, *United States v. Swartz Family Tr.*, 67 F.4th 505, 514–15 (2d Cir. 2023) (affirming denial of petition that was filed three months after petitioner claimed to have received notice); *United States v. Tucker*, No. 16 Cr. 91 (PKC), 2020 WL 6891517, at *5 (S.D.N.Y. Nov. 24, 2020) (collecting cases and observing that "[s]everal courts of appeals, including the Second Circuit, have suggested or concluded that the failure to submit a petition within the 30-day period extinguishes a petitioner's right to commence an ancillary proceeding"); *see also United States v. Afriyie*, No. 16 Cr. 377 (PAE), 2017 WL 6375781, at *4 (S.D.N.Y. Dec. 11, 2017) (denying motion to vacate final order of forfeiture where motion was filed six months after entry of final order).

As the *Concepcion* court explained, this thirty-day filing requirement "helps inform the Court's determination of whether [the third party] filed its [Rule 60(b)] motion within a reasonable time."  668 F. Supp. 3d at 161.  The court held that the third party's four-month delay between receiving the notice of forfeiture and filing the motion was "particularly unreasonable" when viewed through the lens of the thirty-day requirement. *Id.* at 161–62.  As a result, "even if Rule 60(b)(6) was the applicable basis for the pending motion, the Court would conclude that [the third party] failed to timely file the motion." *Id.* at 162.

The Eighth Circuit reached a similar conclusion in *Puig*.  In that case, giving the third party "the greatest leeway possible," the court observed that his time to file a petition began to run on May 13, 2003.  *Puig*, 419 F.3d at 704.  But he did not file a petition until July 7, 2003, "well over 30 days later."  *Id.*  Citing the thirty-day period in

7

§ 853(n)(2), the Eighth Circuit affirmed the district court's denial of the Rule 60(b) motion based on "[the third party's] failure to timely alert the court of his claimed right to the property." *Id.*[3]

The same reasoning applies here. The government contends that it complied with its obligations by sending notice to NYCTL, BNY, and various City agencies. Doc. 849 at 2; Doc. 942 at 3. Even assuming that the initial notice was deficient, however, the City and MTAG concede that they were aware of the forfeiture action by November 19 and November 29, 2021, respectively. Yet the City waited nearly three months to file its Rule 60(b) motion, while MTAG waited approximately two months. The City and MTAG have not offered any explanation for the delay. These circumstances are not analogous to cases where third parties sought relief swiftly after receiving notice. *See United States v. Estevez*, 845 F.2d 1409, 1410–11 (7th Cir. 1988) (reversing denial of Rule 60(b) motion where third party sought relief within nineteen days of receiving notice of forfeiture); *Bouler*, 927 F. Supp. at 912 (granting Rule 60(b) motion where third party "immediately moved to intervene" in the case "as soon as he learned of the forfeiture order"). Instead, as in *Concepcion* and *Puig*, the parties' failure to act promptly upon learning of the forfeiture proceeding means that relief under Rule 60(b) is unwarranted.[4]

Searching for support, MTAG turns to dicta in a footnote in *DSI Associates LLC v. United States*, 496 F.3d 175 (2d Cir. 2007). There, a general creditor had not shown that it was prevented from "converting its inchoate interest in the form of a state court

---

[3] The *Puig* court evaluated the motion as raising a question of excusable neglect under Rule 60(b)(1). 419 F.3d at 702. But even assuming Rule 60(b)(6) applies here, the court's reasonableness analysis is still relevant because motions under both subsections "must be filed within a reasonable time." *Concepcion*, 668 F. Supp. 3d at 161 n.8 (citing Fed. R. Civ. P. 60(c)(1)).

[4] MTAG relies on *United States v. Sayegh*, No. 16 Cr. 00506 (DGC), 2019 WL 530064 (D. Ariz. Feb. 11, 2019), where the third party filed a Rule 60(b) motion four months after the court dismissed her petition. *Id.* at *4. But the court there found that extraordinary circumstances warranted relief because the third party's original attorney had been grossly negligent in falsely reassuring her that the case was progressing favorably. *Id.* at *3. And the third party promptly sought and obtained new counsel less than a month after learning that the court had dismissed her petition. *Id.* at *4.

prejudgment attachment into a 'legal interest' under section 853(n)." *Id.* at 187 n.18. The Second Circuit suggested that, under Connecticut law, the general creditor might be able to perfect its prejudgment attachment by obtaining a judgment lien on the forfeited property at issue. *Id.* After perfecting the judgment, the creditor "might then file a Rule 60(b) motion to reopen the ancillary forfeiture proceeding in the district court and litigate its claim as to its property interest." *Id.* MTAG reasons that "[i]f the Second Circuit was willing to allow a general creditor the time needed to perfect its lien, despite the delay needed to do so, MTAG's filing a 60(b) motion here does not constitute an unreasonable delay." Doc. 842-1 at 16.

This argument reads far too much into the footnote. While the Second Circuit noted that the creditor "might . . . file a Rule 60(b) motion," such a motion would still be subject to the "reasonable time" requirement of Rule 60(c)(1). The court did not express any view as to when it would become unreasonable for the creditor to file a Rule 60(b) motion after perfecting the judgment, but presumably some such limit exists. The footnote does nothing to demonstrate that it was reasonable for MTAG to wait two months—twice as much time as a petitioner has to assert an interest under the criminal forfeiture statute—before filing its Rule 60(b) motion in this case.[5]

---

[5] As alternative relief, the City requests a "declaration" that the Department of Finance's interests in the Rogers Avenue property were not subject to the final order of forfeiture. Doc. 935 at 22. According to the City, Nasir Holding argues in the quiet title action that the City's interests in the property—including any unpaid property taxes and violations issued by the Department of Finance—have been extinguished. *Id.* The City continues: "Nasir relies solely on the Final Order as its basis to clear title in the State Court action; however, the Final Order does not include this agency or list [it] by name." *Id.* (citing Doc. 664 at 3–5). The City therefore asks the Court to "declare that [the Department of Finance's] interests were not subject to the Final Order." *Id.* But the City does not explain why it would be appropriate for the Court to issue such a "declaration" in this proceeding. Because the City's arguments are more properly addressed to the state court in the quiet title action, the request for a declaration is denied.

**IV.    CONCLUSION**

For the foregoing reasons, the City's and MTAG's motions to reopen the final order of forfeiture concerning the Rogers Avenue property are DENIED.  The Clerk of Court is respectfully directed to terminate Docs. 841, 842, 845, 919, 931, and 939.

It is SO ORDERED.

Dated:   October 17, 2024
         New York, New York

                                                           _____
                                                           EDGARDO RAMOS, U.S.D.J.